UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DEBRA CAREY,

                Plaintiff,

    – against –

CITY OF NEW YORK, POLICE OFFICER VIET DANG, and POLICE OFFICER JOHN DOE,

                Defendants.

---

Civil Action No.:

**COMPLAINT**

13 CV 2133

**JURY TRIAL DEMANDED**

      Plaintiff Debra Carey, by her attorneys, Mark A. Marino, PC, for her Complaint against Defendants City of New York, Police Officer Viet Dang, and Police Officer John Doe, alleges, upon personal knowledge and upon information and belief:

**NATURE OF THE ACTION**

      1.      On July 14, 2012, the plaintiff, Debra Carey, was falsely arrested and imprisoned by an NYPD police officer after voluntarily stopping and asking a group of police officers for directions. Plaintiff was arrested for driving while intoxicated on the spot, although she asked the arresting officer (but was denied) to administer a field sobriety test. Plaintiff was hauled to the NYPD's 44th Precinct with five police officers and given a Breathalyzer test on which she registered a blood-alcohol level of 0.00%. (The allegations in this paragraph, and further described below, are hereinafter referred to, collectively, as the "Incident.")

      2.      The defendant police officers' actions caused injuries to Plaintiff, including loss of freedom and psychological injury, among other things.

## PARTIES

3. Plaintiff Debra Carey ("Plaintiff") is, and was at the time of the Incident, a resident of Westchester County, State of New York.

4. Defendant City of New York is, and was at the time of the Incident, a municipal corporation duly organized under, and existing by virtue of, the laws of the State of New York.

5. Defendant Police Officer Viet Dang ("Dang") was, at the time of the Incident, a police officer employed by the NYPD – and thus Defendant City of New York – as a member of Patrol Borough Bronx stationed at the 44th Precinct (Tax ID No. 951653).

6. At all relevant times, including, but not limited to, the time during which the Incident took place, Defendant Dang was acting within the scope of employment.

7. At all relevant times, including, but not limited to, the time during which the Incident took place, Defendant Dang was acting under color of state law.

8. Defendant Police Officer John Doe ("John Doe") was, at the time of the Incident, a police officer (or lieutenant) employed by the NYPD – and thus Defendant City of New York – stationed, upon information and belief, at the NYPD's 44th Precinct.

9. At all relevant times, including, but not limited to, the time during which the Incident took place, Defendant John Doe was acting within the scope of employment.

10. At all relevant times, including, but not limited to, the time during which the Incident took place, Defendant John Doe was acting under color of state law.

11. Defendants Dang and John Doe are referred to herein, together, as the "Officer Defendants."

12. Defendants City of New York, Officer Dang, and Officer John Doe are referred to herein, collectively, as "Defendants."

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over the instant action, pursuant to 28 U.S.C. §§1331 and 1343, as this is a civil action asserting claims under the federal civil rights laws.

14. This Court has supplemental jurisdiction over the claims asserted under New York state law, pursuant to 28 U.S.C. §1367, as these claims are so related to Plaintiff's claims under the federal civil rights laws that they form part of the same case or controversy.

15. Venue is proper, pursuant to 28 U.S.C. §1391, as the events and transactions giving rise to Plaintiff's claims occurred within this district.

## PROCEDURAL REQUIREMENTS

16. Plaintiff has complied with General Municipal Law Section 50 and all procedural requirements necessary to commence a lawsuit against Defendants, including Defendant City of New York.

17. This is an action for psychological injuries and time in confinement, among other things, sustained by Plaintiff arising out of the Incident.

18. On or about September 5, 2012, within ninety days after the accrual of the instant action, a satisfactory Notice of Claim was filed with Defendant City of New York, or its agent(s), on behalf of Plaintiff.

19. On or about November 26, 2012, Plaintiff appeared for, and testified at, a hearing pursuant to Section 50(h) of the General Municipal Law of New York at the request of Defendant City of New York or its agent(s).

20. Defendant City of New York, and/or its agent(s), has refused or neglected to make any adjustment or payment on Plaintiff's claims (as stated in Plaintiff's Notice of Claim).

21. Plaintiff commences this action within one year and ninety days of the date of accrual of the instant action.

## FACTUAL ALLEGATIONS

22. At approximately 11:30 p.m. on July 14, 2012, Plaintiff was driving from New York City to her home in Yonkers, New York.

23. At approximately 11:30 p.m. on July 14, 2012, Plaintiff voluntarily stopped at or near Jerome Avenue and 167th Street to ask a group of police officers for directions.

24. After Defendant John Doe told Plaintiff to pull over to the side of the road, Defendant Dang approached Plaintiff's vehicle from the passenger's side.

25. Plaintiff told Defendant Dang that she was stuck in traffic and needed help getting back on a road familiar to her.

26. Defendant Dang told Plaintiff to wait while he went to speak with another police officer, Defendant John Doe.

27. When Defendant Dang returned, he asked Plaintiff to get out of the car and present her license and registration, which Plaintiff did.

28. Defendant Dang told Plaintiff that she was under arrest for drunk driving.

29. When Plaintiff asked why he thought she had been drinking, Defendant Dang told her that it was because she had a red face, was nervous, and was stuttering.

30. Plaintiff explained to Defendant Dang that her face was red because she was at the beach all day and offered to show him different parts of her body, which were also red from being at the beach all day.

31. Plaintiff was nervous because she was lost in an unfamiliar neighborhood and was being interrogated by police officers who she trusted to help her, not arrest her.

32. Plaintiff was not stuttering.

33. Plaintiff asked the Officer Defendants if she could take a field sobriety test, to which Defendant John Doe replied that Plaintiff watches too much television.

34. Plaintiff had not consumed any alcohol or drugs, prescription or otherwise, on July 14, 2012.

35. The Officer Defendants took Plaintiff to the NYPD's 42nd Precinct because, as she was told, that is where the Breathalyzer tests are administered.

36. Plaintiff waited thirty minutes for a police van to show up and take her to the 42nd Precinct.

37. A police officer took Plaintiff's car to the 42nd Precinct.

38. A total of five officers accompanied Plaintiff to the 42nd Precinct.

39. Plaintiff was placed in a holding cell at the 42nd Precinct.

40. Officers from the highway patrol showed up around 1:00 a.m. on July 15, 2012 and administered the Breathalyzer test.

41. The Breathalyzer test was videotaped.

42. Defendants have an obligation to preserve evidence including, but not limited to, the aforementioned videotape.

43. The Breathalyzer test revealed that Plaintiff's blood-alcohol level was 0.00%.

44. Plaintiff was then inexplicably placed back into handcuffs and put back into the holding cell.

45. Plaintiff went back to both the 42nd and 44th Precincts the following day and requested her paperwork.

46. An arrest is defined by the NYPD as "taking a person into custody to answer for an offense."

47. Officers at both precincts told Plaintiff that there was no paperwork because she was not "arrested."

48. Plaintiff made a complaint to the Civilian Complaint Review Board but received a letter stating that they could not follow up because there is no paperwork and no arrest.

49. Upon information and belief, this was Defendant Dang's first arrest.

50. While at the precinct, Defendant John Doe was going over and explaining the arrest process with Defendant Dang.

51. Defendant John Doe was teaching a rookie officer how to process an arrest, using a vulnerable person as a guinea pig.

52. According to the NYPD, "[a] member of the service (uniformed or civilian) who is served with legal papers or is otherwise involved in a court proceeding arising out of an act committed in the performance of duty will be defended by the Corporation Counsel and the city will pay any resulting judgment, if it is determined in accordance with the General Municipal Law (Section 50-k) that at the time of the occurrence, the member of the service (uniformed or civilian) was acting in the proper discharge of duty."

53. On July 14-15, 2012, Defendant Dang was a member of the service (uniformed or civilian) was acting in the proper discharge of duty.

54. On July 14-15, 2012, Defendant John Doe was a member of the service (uniformed or civilian) was acting in the proper discharge of duty.

55. Upon information and belief, Defendant Dang has an extensive history of making false arrests.

56. Upon information and belief, Defendant Dang has a history of acting dishonestly.

57. Upon information and belief, Defendant John Doe has an extensive history of making false arrests.

58. Upon information and belief, Defendant John Doe has a history of acting dishonestly.

59. Plaintiff is now afraid to approach NYPD police officers for fear that they will abuse their power again.

60. This action falls within one or more of the exemptions set forth in CPLR §1602.

### FIRST CLAIM FOR RELIEF
### VIOLATION OF 42 U.S.C. 1983 – FALSE ARREST
### As Against the Officer Defendants

61. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 60, inclusive, as though fully set forth herein.

62. Under the Constitution of the United States of America and 42 U.S.C. 1983, Plaintiff has the right to be free from unreasonable and illegal searches and seizures, including a false arrest.

63. Each of the Officer Defendants violated Plaintiff's rights when they intentionally arrested and confined Plaintiff, who was conscious at the time, without consent, justification, privilege, or probable cause.

64. Each of the Officer Defendants' actions caused injuries to Plaintiff, including loss of freedom and psychological injury, among other things.

65. Each of the Officer Defendants took the aforementioned actions against Plaintiff during the course, and within the scope, of employment with the NYPD and Defendant City of New York.

66. Each of the Officer Defendants was acting under color of state law at all times during the Incident.

67. The actions taken by each of the Officer Defendants against Plaintiff were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### VIOLATION OF 42 U.S.C. 1983 – FALSE IMPRISONMENT
### As Against the Officer Defendants

68. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 67, inclusive, as though fully set forth herein.

69. Under the Constitution of the United States of America and 42 U.S.C. 1983, Plaintiff has the right to be free from unreasonable and illegal searches and seizures, including false imprisonment.

70. Each of the Officer Defendants violated Plaintiff's rights when they intentionally arrested and confined Plaintiff, who was conscious at the time, without consent, justification, privilege, or probable cause.

71. Each of the Officer Defendants took the aforementioned actions against Plaintiff during the course, and within the scope, of employment with the NYPD and Defendant City of New York.

72. Each of the Officer Defendants was acting under color of state law at all times during the Incident.

73. The actions taken by each of the Officer Defendants against Plaintiff were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### VIOLATION OF 42 U.S.C. 1983 (MUNICIPAL LIABILITY)
### As Against Defendant City of New York

74. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 73, inclusive, as though fully set forth herein.

75. The NYPD routinely (and unconstitutionally) refuses to consider the Incident, where a civilian is taken into custody to answer for an offense, as an "arrest."

76. The NYPD routinely refuses to generate paperwork for people are taken into custody to answer for an offense.

77. The NYPD routinely and dishonestly allows young officers to make suspect arrests to teach them how to process arrests, among other things.

78. Defendant City of New York has shown a deliberate indifference towards citizens with respect to the foregoing unconstitutional policies.

79. Plaintiff sustained injuries as a result of Defendant City of New York's unconstitutional policies.

80. The existence of the above-described unlawful *de facto* policies and/or widespread customs and practices is known to, encouraged, and/or condoned by supervisory and policy-making officer and officials of the NYPD and Defendant City of New York.

81. The aforementioned actions of the Officer Defendants resulted from, and were taken pursuant to, the above-mentioned *de facto* policies and/or well-settled and widespread customs and practices of Defendant City of New York, which are implemented by members of the NYPD.

82. Plaintiff sustained injuries as a result of Defendant City of New York's unconstitutional policies.

83. Defendant City of New York is liable and responsible for the acts of the Officer Defendants resulting from its deliberate indifference to these unconstitutional practices.

### FOURTH CLAIM FOR RELIEF
### FALSE ARREST
### As Against Defendants

84. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 83, inclusive, as though fully set forth herein.

85. Each of the Officer Defendants intentionally arrested and confined Plaintiff without probable cause, without justification, and without consent.

86. Each of the Officer Defendants' actions caused injuries to Plaintiff, including loss of freedom and psychological injury, among other things.

87. Each of the Officer Defendants took the aforementioned actions against Plaintiff during the course, and within the scope, of employment with Defendant City of New York.

88. Defendant City of New York is liable for the acts of its agents/employees, including the Officer Defendants, taken against Plaintiff during the course, and within the scope, of employment by Defendant City of New York under the doctrine of *respondeat superior*.

### FIFTH CLAIM FOR RELIEF
### FALSE IMPRISONMENT
### As Against Defendants

89. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 88, inclusive, as though fully set forth herein.

90. Each of the Officer Defendants intentionally caused Plaintiff to be imprisoned and confined on Jerome Avenue and 167th Street, the 42nd Precinct, and the 44th Precinct.

91. Neither of the Officer Defendants had probable cause or other justification to imprison and confine Plaintiff, who was conscious during this time of confinement.

92. Plaintiff did not consent to the aforementioned imprisonment and confinement.

93. Each of the Officer Defendants' actions caused injuries to Plaintiff, including loss of freedom and psychological injury, among other things.

94. Each of the Officer Defendants took the aforementioned actions against Plaintiff during the course, and within the scope, of employment with Defendant City of New York.

95. Defendant City of New York is liable for the acts of its agents/employees, including the Officer Defendants, taken against Plaintiff during the course, and within the scope, of employment by Defendant City of New York under the doctrine of *respondeat superior*.

## SIXTH CLAIM FOR RELIEF
### NEGLIGENT HIRING, TRAINING, AND SUPERVISION
### As Against Defendant City of New York

96. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 95, inclusive, as though fully set forth herein.

97. Defendant City of New York has a duty to train and supervise its police force with respect to the proper way to test to see whether someone is intoxicated before hauling them into a precinct for hours.

98. Defendant City of New York breached its duty to train and supervise its police force with respect to the proper way to test to see whether someone is intoxicated before hauling them into a precinct for hours

99. Defendant City of New York has a duty to train and supervise its police force with respect to creating paperwork for people who are arrested, as that term is supposed to be defined.

11

100. Defendant City of New York breached its duty to train and supervise its police force with respect to creating paperwork for people who are arrested, as that term is supposed to be defined.

101. Defendant City of New York has a duty to train and supervise its police force with respect to acknowledging the true definition of the term "arrest," as evidenced in the NYPD Patrol Guide.

102. Defendant City of New York breached its duty to train and supervise its police force with respect to acknowledging the true definition of the term "arrest," as evidenced in the NYPD Patrol Guide.

103. Plaintiff has sustained injuries as a result of the aforementioned breaches.

104. Defendant City of New York is liable for the acts of its agents/employees, including the Officer Defendants, taken against Plaintiff during the course, and within the scope, of employment by Defendant City of New York under the doctrine of *respondeat superior*.

## DEMAND FOR JURY TRIAL

105. Plaintiff demands a trial by jury.

**WHEREFORE**, plaintiff Debra Carey respectfully requests that this Court enter Judgment in her favor and against Defendants as follows:

a.  compensatory and punitive damages as against Defendant City of New York and/or one or more of the Officer Defendants, jointly and severally, in a combined amount to be determined at trial, but not less than five hundred thousand dollars ($500,000.00);

b.  attorney's fees incurred during this action, pursuant to 42 U.S.C. 1988(b), the determination of which lies within the sound discretion of this Court;

c.  costs incurred during this action, pursuant to 42 U.S.C. 1988(b), the determination of which lies within the sound discretion of this Court;

d.  expert fees incurred during this action, pursuant to 42 U.S.C. 1988(c), the determination of which lies within the sound discretion of this Court;

e.  all statutory interest on any sums awarded to Plaintiff; and

f.  such other and further relief as the Court deems proper and fair.

Dated: New York, New York
       January 25, 2013

Respectfully yours,

MARK A. MARINO, PC

_____
Mark A. Marino (MM 0676)
*Attorney for Plaintiff Debra Carey*
380 Lexington Avenue, 17th Floor
New York, New York 10168
Tel: 212.748.9552
Fax: 646.219.5350